Alfred J. WINN and Georgine S. Winn, Appellants,

v.

Harold D. MANNHALTER, Helen D. Mannhalter, Area, Inc. Realtors, Joan Bourne and Winnie Snodgrass, Appellees.

Harold D. MANNHALTER and Helen D. Mannhalter, Appellants and Cross-Appellees,

v.

AREA, INC. REALTORS, Joan Bourne and Winnie Snodgrass, Appellees and Cross-Appellants.

Nos. S–239/271/272.

Supreme Court of Alaska.

Nov. 1, 1985.

Rehearing Denied Dec. 6, 1985.

Ronald D. Flansburg, Law Offices of Charles E. Tulin, Anchorage, for Alfred J. Winn and Georgine S. Winn.

Leroy J. Barker, Robertson, Monagle, Eastaugh & Bradley, Anchorage, for Area, Inc., Realtors, Joan Bourne and Winnie Snodgrass.

Edward L. Miner and Vincent Vitale, Law Offices of Vincent Vitale, Anchorage, for Harold D. Mannhalter and Helen D. Mannhalter.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This is an appeal from a Civil Rule 41(b) dismissal of a complaint for rescission. The Winns purchased a restaurant business as a going concern from the Mannhalters. One of the business assets was a lease purportedly ending in 1986. Following a default on a deed of trust encumbering the underlying fee, the foreclosure purchaser's assignee asserted superior title in 1981, whereupon the Winns sued the Mannhalters and their realtor for rescission and subsequently quit the premises. The Mannhalters counterclaimed for the purchase price and cross-claimed against their realtor for disgorgement of its commission. The trial court dismissed the Winns' complaint under Civil Rule 41(b) at the close of their case in chief. Following a trial, the trial court entered judgment for the Mannhalters on their counterclaim and cross-claim. We affirm in part, reverse in part and remand.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Harold D. Mannhalter and Helen D. Mannhalter owned and operated the Country Kitchen Restaurant, which they decided to sell as a going concern. On August 9, 1976, the Mannhalters and their landlord (Landlord) agreed to a five year lease ending August 8, 1981. In January 1978, Peoples Bank and Trust Company (Bank) loaned Landlord a sum of money secured by a deed of trust on the fee underlying the Mannhalters' lease. Apparently no party to *this* action knew of the trust deed until early 1980. In June 1978, the lease was extended to August 1, 1983.

In July 1978, the Mannhalters entered a listing agreement for the sale of the Country Kitchen Restaurant with Area, Inc. Realtors and Agents Joan Bourne and Winnie Snodgrass (Area and the Agents, respectively). The Mannhalters decided on an asking price of $450,000; the Agents' commission was set at 10% of the purchase price.

The Agents prepared a brochure which incorrectly stated that the Country Kitchen lease expired in August *1986.* Alfred A. Winn and Georgine S. Winn contacted the Agents, discovered the error in the brochure, and told the Agents they were interested in purchasing the business but desired a longer lease. In August 1978, Gordon Graham, an agent of Landlord, wrote to the Mannhalters revoking the lease extension of June 1978, and extending or offering to extend the lease through August 1986.

The Mannhalters and Winns signed a receipt and agreement to purchase in August, but the Winns were unable to procure the requisite financing. They signed a revised purchase agreement in November 1978, using a form intended for residential transactions. The Winns agreed to an $85,000 down payment; the Mannhalters financed $365,000. Monthly payments were

---

**1.** This dispute arose from a complex factual situation; therefore, we shall set forth the facts   at some length, tedious though they may be.

$5,300 over several years, with an additional balloon payment of $15,000 after one year. The loan was secured only by the business and its furnishings. Although the agreement provided that the Mannhalters would obtain title insurance, the parties never discussed or procured any. Escrow closed in December.

In October 1979, Landlord defaulted on the January 1978 deed of trust. Bank filed notice of default in February 1980. Bank bought the property at the nonjudicial foreclosure sale, then sold it to the Hayes-Teekel Partnership (Partnership) in September.

In December 1980, Partnership informed the Winns that Partnership believed the lease expired in August 1981. In March 1981, Partnership told the Winns that rent would be increased to $6,000 per month in September 1981.

The Winns stopped making monthly payments to the Mannhalters and filed this action for rescission in June 1981. The Mannhalters counterclaimed for the purchase price and cross-claimed against Area and the Agents for damages and disgorgement of their commission. On August 8, 1981, the Winns "vacated" the premises.

Partnership allowed the Winns to remain on the premises as periodic tenants at rent of $6,000 per month for a maximum period of 90 days. On August 10, two days after the lease allegedly expired, the Winns reopened under the name Winns Family Restaurant.

On October 2, 1981, the Winns executed three quit-claim deeds in favor of certain relatives and friends, receiving no consideration. On October 6, a receivership hearing was held concerning payment of the Winns' payment arrears into a fund. On October 8, the Winns were evicted by Partnership. The Winns sold the food inventory to Edward Holta, Mr. Winn's brother-in-law, for $5,124.35. On October 10, the restaurant opened under the name of Cozy Kitchen Restaurant, under Holta's ownership. On October 20, the receivership court ordered the Winns to deposit payment arrears into the court registry.

Trial began in September 1981 before Judge James A. Hanson. The Winns' claims against the Mannhalters, Area and the Agents were dismissed pursuant to Civil Rule 41(b) at the close of their case in chief. Judgment was entered in favor of the Mannhalters on their counterclaim for the purchase price. The Mannhalters prevailed on their cross-claim for disgorgement of Area's commission, but were awarded no other damages. Although the Winns moved for an equitable allocation of costs, the motion was denied and all costs for all claims were assessed against the Winns. Everyone appeals.

## II. STANDARD OF REVIEW

The trial court granted the Mannhalters' motion for involuntary dismissal under Civil Rule 41(b) at the close of the Winns' case in chief.[2] In considering a motion to dismiss under Civil Rule 41(b), the trial court must view the plaintiff's evidence in its most favorable light. *Glover v. Sager,* 667 P.2d 1198, 1201–2 (Alaska 1983). The motion should be granted if plaintiff's proof fails in some respect, but should be denied when plaintiff presents a prima facie case. *Id.; Rogge v. Weaver,* 368 P.2d 810, 813 (Alaska 1962).

The Winns seek rescission because the Mannhalters breached duties to (1) provide a lease until August 1986, (2) provide marketable title and title insurance, and (3) defend the Winns' right to possession. The Winns claim that Area and the Agents (1) breached the purchase contract, (2) misrep-

---

**2.** Alaska R.Civ.P. 41(b) provides in pertinent part:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)....

resented the lease term and (3) were negligent in handling the sale. The question before us is whether the Winns presented a prima facie case under any theory; in order to withstand the motion for involuntary dismissal under Civil Rule 41(b), they must have presented evidence that the defendants breached a duty, thereby causing injury to the Winns.

### III. DUTY TO CONVEY A LEASE UNTIL AUGUST 1986

■ The Mannhalters' duty arises from an express promise to convey a lease to 1986. In order to withstand a Civil Rule 41(b) motion, the Winns must present evidence that their eviction by Partnership was rightful.

The Winns argue that the lease term was never validly extended beyond August 1981. Although the letter of June 1978 extended the term to 1983, that extension was expressly revoked by the letter of August 1978. According to the Winns, the August letter was merely an offer which was never accepted by the Mannhalters. The Mannhalters and Area contend the August 1978 letter was a valid extension, since it was incorporated by reference in the Assignment and Modification of Lease, which was signed by the Winns, the Mannhalters and Landlord.

The Assignment and Modification of Lease was signed by the Winns, the Mannhalters and Landlord; however, it does not incorporate the August 1978 letter, only that of June 1978.[3] We conclude that the

Winns made out a prima facie case of duty and breach.

The Winns also contend that, even if the lease was extended, Partnership's interest has priority over the extension as a matter of law because the deed of trust was recorded before the lease extension. The Mannhalters contend the foreclosure did not affect the lease extension because Partnership's deed states it is subject to recorded and unrecorded leases.

■ The buyer at a nonjudicial foreclosure of a deed of trust takes title equivalent to that of the trustor at the time the trust was executed. AS 34.20.090(a).[4] Therefore, the buyer at a trust deed sale takes title subject only to encumbrances existing at the time the trust deed was executed; the buyer's knowledge of subsequently-created interests is irrelevant. *Burnett, Waldock & Padgett Investments v. C.B.S. Realty*, 668 P.2d 819, 822–23 (Alaska 1983); *Alaska Laborers Training Fund v. P & R Enterprises*, 583 P.2d 825, 826–27 (Alaska 1978); *Lynch v. McCann*, 478 P.2d 835, 836–37 (Alaska 1970).

■ When Bank purchased the property at foreclosure, it took title equivalent to that of Landlord in January 1978. At that time, the property was subject only to the Mannhalters' pre-existing lease expiring in 1981. Bank's interest was not subject to the subsequent lease extension, even if Bank had notice thereof. However, the deed from Bank to Partnership expressly stated that Partnership's interest was taken subject to recorded and unrecorded leases.[5] The lease extension letter of August

---

3. The Assignment and Modification of Lease states that the lease, originally expiring on August 9, 1981, was "extended ... to August 1, 1983 ... in the attached letter of Lessor to Lessee dated June 6, 1978."

   No party raised this problem at trial or on appeal. We note that all the evidence indicates that the parties intended to incorporate the letter of August 1978.

4. AS 34.20.090(a) provides in pertinent part:

   The sale and conveyance transfers all title and interest which the party executing the deed of trust had in the property sold at the time of its execution....

5. Partnership's deed reads in pertinent part:

WARRANTY DEED AND ASSUMPTION

   The Grantor ... conveys and warrants unto ... PARTNERSHIP ... all of its right, title, and interest in ... that ... real property ...

   TOGETHER WITH, ALL AND SINGULAR, the tenements, hereditaments, and appurtenances thereunto belonging or in anywise appertaining, SUBJECT TO the rights and reservations expressed in the patent to said land; existing easements for power, light and other utilities; restrictions and encumbrances of record; encroachments ascertainable by physical inspection of the premises; and recorded or unrecorded leases affecting said property.

   SUBJECT ALSO to that certain deed of trust for the benefit of First Federal Savings &

1978 was recorded. We therefore conclude that the deed by which Partnership acquired the property from Bank subordinated Partnership's interest to that of the Winns.[6] Therefore, the lease was valid until at least 1983. The question on remand is whether the lease was validly extended to 1986. If it was, the Mannhalters satisfied their duty.

## IV. DUTY TO CONVEY MARKETABLE TITLE AND TO PROVIDE TITLE INSURANCE

The Winns argue that the Mannhalters breached their contractual duties to convey "good title" and provide title insurance. The Mannhalters contend the Winns waived this argument because it was not raised in the points on appeal. Alternatively, the Mannhalters contend they were under no such duties.

█ As a general rule, we will not consider an issue not raised in the points on appeal. Alaska R.App.P. 210(e).[7] However, we may consider the issue if it is raised at trial, adequately briefed on appeal, and the court and counsel are sufficiently apprised of the issue presented. *Forquer v. State Commercial Fisheries Entry Commission,* 677 P.2d 1236, 1241 n.4 (Alaska 1984); *Mullen v. Christiansen,* 642 P.2d 1345, 1350 (Alaska 1982); *Hootch v. Alaska State-Operated School System,* 536 P.2d 793, 808 n.58 (Alaska 1975). Upon review of the record and briefs, we conclude that the Winns preserved their right

to appeal this issue and exercise our discretion to consider its merit.

█ Boilerplate language in the receipt and agreement to purchase contract obligated the Mannhalters to convey good title and obtain and pay for a title insurance policy. When a standard form is used in an inappropriate transaction, all the terms are not necessarily binding on the parties. *See, e.g., Foster v. Cross,* 650 P.2d 406, 408–9 (Alaska 1982); Restatement (Second) of Contracts § 203, comment b (1981). Here the parties used a residential real estate sale form to transfer a business as a going concern. Furthermore, there is evidence in the record that title insurance was never discussed by the parties, that title insurance was unnecessary, and that it is not the custom and practice in Alaska to procure title insurance on space leases. We conclude that, notwithstanding the language in the form, the Mannhalters undertook no duty to convey marketable title or provide title insurance as a matter of law.

## V. DUTY TO PROTECT THE WINNS' RIGHT TO POSSESSION

The Winns contend that the Mannhalters had a duty to assure the Winns' continued possession of the premises. The Mannhalters argue that the Winns gave them no opportunity to do so because the Winns did not inform the Mannhalters of their intent to quit the premises.

█ The seller's duty to defend the buyer's title to the premises is implied when the seller "conveys and warrants" the

Loan Association of Anchorage, dated May 15, 1972 and recorded May 16, 1972 in Book 787 at page 521 in the Anchorage Recording District, Third Judicial District, Anchorage, Alaska, given to secure certain deed of trust notes dated May 12, 1972 and November 14, 1973.
Grantee and DONALD W. TEEKELL and TUCKEY W. HAYES convenant and agree that they will assume and pay the deed of trust and deed of trust notes hereinabove mentioned ...
DATED at Anchorage, Alaska, this 12th day of September, 1980.

**6.** The Winns also argue that the trustee did not strictly comply with statutory foreclosure notice

provisions. Because we conclude that foreclosure did not affect the lease extension, we do not reach this issue.

**7.** Appellate Rule 210(e) provides in pertinent part:
At the time of filing his notice of appeal, the appellant shall serve and file with this designation a concise statement of the points on which he intends to rely on the appeal. The appellate court will consider nothing but the points so stated....
*See Wetzler v. Wetzler,* 570 P.2d 741, 742 n.2 (Alaska 1977); *Saxton v. Splettstoezer,* 557 P.2d 1126, 1127 (Alaska 1976).

property to the buyer. AS 34.15.030.[8] Absent this or substantially similar language, no covenant is implied in a conveyance of real estate. AS 34.15.080.[9]

■ The Assignment and Modification of Lease merely "assigns" the lease to the Winns; it contains no language similar to "convey and warrant" indicating an implied covenant to defend the Winns' title. Nor does the assignment contain an express assumption of this duty. Therefore, the Mannhalters had no duty to protect the Winns' continued possession under the lease.

## VI. CAUSATION

The Mannhalters argue that the Winns failed to prove that breach of the Mannhalters' duties was a legal cause of the Winns' damages, contending that the true cause was the Winns' failure to mitigate damages, coupled with their voluntary abandonment of the premises.

■ Causation is a required element in an action for breach of contract. *City of Whittier v. Whittier Fuel & Marine*, 577 P.2d 216, 224 (Alaska 1978). Professor Williston indicates that damages which plaintiff might avoid with reasonable effort are not caused by defendant's harm and should not be charged against him. 11 S. Williston, Williston on Contracts § 1353, at 274 (3d ed. 1968).

■ The Winns presented a prima facie case that the Mannhalters breached their duty to convey a lease until 1986. We conclude that the evidence, viewed in a light most favorable to the Winns, is sufficient to create an inference of causation.

■ The Mannhalters' argument that the Winns failed to mitigate their damages is an affirmative defense. The Winns need not prove a negative—that they could not mitigate damages. Rather, the burden of proof is on the defendants to show by a preponderance of the evidence that the Winns could have avoided injury by reasonable efforts which they failed to make.

## VII. EQUITABLE DEFENSES

■ The Winns argue that the trial court erred by adopting findings of fact and conclusions of law on the issues of failure to rescind with reasonable promptness, laches and unclean hands without hearing the Winns' rebuttal evidence. The Mannhalters contend it was proper to enter these findings, because they are part of the Winns' prima facie case for rescission. Alternatively, the Mannhalters contend it was proper to enter findings of fact and conclusions of law on affirmative defenses because the Winns proved them in presenting their case in chief.

Failure to rescind with reasonable promptness, laches and unclean hands are affirmative defenses, therefore the burden of proof is on the Mannhalters. The Winns need not prove their absence to present a prima facie case for rescission. Viewing the evidence in the light most favorable to the non-moving party, we conclude that the trial court erred.

## VIII. THE WINNS' CLAIMS AGAINST AREA AND THE AGENTS

■ The Winns claim that Area and the Agents are also liable for misrepresenting the length of lease term. A prima facie case of misrepresentation requires evidence that there was a misrepresentation of a

---

**8.** AS 34.15.030 provides in pertinent part:
　(a) A warranty deed for the conveyance of land may be substantially in the following form, without express covenants:
　　"The grantor ... *conveys and warrants* to ... [the grantee] ... the following described real estate...."
　(b) A deed substantially in the form set forth in (a) of this section, ... is considered a conveyance in fee simple ... with the following covenants by the grantor: ... (3) that the

grantor warrants the quiet and peaceable possession of the premises, and will defend the title to the premises against all persons claiming the premises.
　(Emphasis added).

**9.** AS 34.15.080 provides:
　No covenant is implied in a conveyance of real estate, whether the conveyance contains special covenants or not.

material contract term on which the buyer actually and justifiably relied. *Cousineau v. Walker*, 613 P.2d 608, 612 (Alaska 1980).

■ Area and the Agents represented that the lease expired in 1986; the Winns' evidence concerning the lease extensions casts doubt on the truth of this representation. The Winns testified that they relied on Area's expertise. We therefore conclude that the Winns presented a prima facie case of misrepresentation against Area and the Agents.

The evidence, viewed in a light most favorable to the Winns, is sufficient to create an inference of causation.

■ The Winns also argue that Area was negligent per se because it did not supervise the Agents[10] or review the final agreement.[11]

When the trial court dismisses a claim under Civil Rule 41(b), it must enter findings as required in Civil Rule 52(a).[12] The trial court entered no findings of fact or conclusions of law concerning the Winns' negligence per se claims.[13]

Civil Rule 41(b) is mandatory; the trial court erred when it did not comply therewith. *Merrill v. Merrill*, 368 P.2d 546, 548 (Alaska 1962). Therefore, we remand this issue to the superior court for the purpose of entering findings of fact. Should this prove impossible in light of our disposition of the Winns' other claims, the superior court should grant a new trial. *Id.*

The Winns argue that Area is responsible for the culpable acts of the Agents under the doctrine of respondeat superior. Area argues that the Agents are not liable to the Winns, therefore, Area is not liable.

■ A broker is liable for the actions of his agents under the doctrine of respondeat superior. *Black v. Dahl*, 625 P.2d 876, 879 n.3 (Alaska 1981). Should the Agents be adjudged liable to the Winns on remand, Area will be jointly and severally liable with them.

## IX. COUNTERCLAIM AND CROSS-CLAIM

The Mannhalters prevailed on their counterclaim for the purchase price against the Winns. Because we reverse the trial court's dismissal of the Winns' complaint, the judgment for the Mannhalters on the counterclaim is also reversed.

The Mannhalters cross-claimed against Area and the Agents, alleging breach of contract, negligent handling of the sale of the business, and failure to disclose the Agents' minimal experience in handling sales of ongoing businesses. The trial court entered judgment for the Mannhalters and ordered Area to disgorge its $45,000 commission. Area and the Agents con-

10. 12 AAC 64.065(b) (Eff. 8/22/79) provides in pertinent part:
    The broker has exclusive authority over and responsibility for
    . . . .
    (5) directing and supervising all real estate business activities for which a license is required and all activities necessary for full compliance with AS 08.88 and regulations adopted under AS 08.88.

11. 12 AAC 64.125 (Eff. 8/22/79) provides in pertinent part:
    (a) Failure of a broker or associate broker to adequately supervise the activities of licensees for whom they are responsible is grounds for suspension or revocation of the broker's or associate broker's license.
    (b) All real estate agreements including, but not limited to, those relating to listing, selling, or purchasing property, shall be reviewed and approved by the broker or associate broker in charge.

12. Alaska R.Civ.P. 41(b) appears *supra* note 2. Alaska R.Civ.P. 52(a) provides in pertinent part:
    In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon. . . . Requests for findings are not necessary for purposes of review. . . . Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

13. The Winns also asserted negligence claims based on the failure to provide title insurance. Because we conclude the boilerplate contract language did not create a duty to provide title insurance, these negligence claims must fail.

tend that disgorgement is an appropriate remedy only when bad faith is proven.

 Disgorgement is an appropriate remedy to deter intentional misconduct by a broker; in the absence of bad faith, damages resulting from the broker's failings may be rectified in a negligence action. *Veach v. Meyeres Real Estate*, 599 P.2d 746, 749 (Alaska 1979). Because the Mannhalters may proceed with their negligence claims against Area and the AGents, disgorgement is not the correct measure of damages. The Mannhalters may recover damages proximately caused by Area and the Agents' negligence in an amount to be determined on remand.

The judgment of the superior court is AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.

MOORE, J., not participating.