HOLTZ, Appellant,

v.

SCHUTT PATTERN WORKS COMPANY et al., Appellees.

[Cite as *Holtz v. Schutt Pattern Works Co.* (1993), 89 Ohio App.3d 663.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61559.

Decided Aug. 2, 1993.

*John E. Duda,* for appellant.

*Ellen Loth,* for appellees.

HARPER, Judge.

This case involves an intentional tort claim filed by plaintiff-appellant, Robert Holtz, against his former employer, defendant-appellee Schutt Pattern Works Company ("Schutt").[1]  In his complaint, Holtz alleged that he was injured while operating an "Oliver" jointer wood-stripping machine ("jointer") on May 18, 1989 at the Schutt plant located at 1390 East 170th Street, Cleveland, Ohio.  Holtz now appeals from the granting of summary judgment in favor of Schutt by the Court of Common Pleas of Cuyahoga County.[2]  A careful review of the record compels reversal.

---

1.  Holtz also set forth a cause of action against Schutt for retaliatory discharge pursuant to R.C. 4123.90.  He does not, however, raise this issue on appeal.

2.  Holtz added breach of warranty and product-liability claims in an amended complaint against Oliver Machinery Company, the manufacturer of the wood-stripping machine at issue.

## I

Robert Holtz's affidavit, which he attached to his response to Schutt's motion for summary judgment, included the following relevant facts and allegations. Holtz was hired by Schutt in November 1988. The jointer that he operated on May 18, 1989 "did not have a safety guard that would go up and across [the machine] table to prevent the blade from being revealed and to keep the operator's hand out of the blade danger zone area." He was nearly injured when a blade on one of the machine's cutting saws broke when he first started to work for Schutt and expressed his concerns to Schutt's owner, Paul Liukart, at that time. According to Holtz, Liukart replied that the machines had not had safety guards for a long period of time and there was no need to worry about it. Holtz stated that on May 18, 1989, "while [he was] guiding the wood board into the blade the wood kickbacked causing [his] left hand to go into the blade amputating his first finger to the first joint and his middle finger to the second joint."

Holtz returned to work approximately six weeks after his injury and worked his regular hours except for one day a week when he received treatment. He asserted that Liukart informed him upon his return that "the sign of a good pattern maker is how many fingers are missing and that most of the older guys have fingers missing." Holtz also missed a few days of work in December 1989 after an automobile accident.

At the end of December 1989, Liukart informed Holtz that he was terminated because he worked too slowly. Holtz believed that his termination was caused by his filing a complaint with the United States Department of Labor, Occupational Safety and Health Administration ("OSHA") and a claim with the Ohio Bureau of Workers' Compensation.

In support of his argument that Schutt was aware that injury was substantially certain to occur during the use of the jointer, Holtz alleged the following:

"10. Affiant says that he believed injury was substantially certain to occur to him because the blades would break periodically and also the wood would kick back periodically on the operator because of the lack of safety guards.

"11. Affiant further says that he has had experiences of these happenings prior to his injury claimed herein but that the Defendant was not about to provide safety guards, and he feared for his job if he did not keep working.

---

Oliver filed for protection under a bankruptcy plan in the Western District of Michigan. The trial court's journal entry dated March 26, 1991 provides that Schutt's motion for summary judgment is granted and that there is no just reason for delay. This court is thus vested with jurisdiction to hear this appeal. Civ.R. 54(B).

"12. Affiant further says that Defendant through Paul Liukart was substantially certain injury was going to occur to his operator's [*sic*] including Plaintiff herein, because of the very same reason described above that without safety guards the blades break and also the wood kicks back causing harm to the operator.

" * * *

"14. Affiant says that Defendant knew with substantial certainty that such injury would occur but in order to save the expense for the safety guards and especially because the safety guards slowed down the production process, the Defendant intentionally refused to provide said guards."

The affidavit of Paul Liukart provides the following additional information. Liukart trained Holtz in the use of the jointer which did not have a safety guard for the previous eight years. Liukart, however, informed Holtz that a guard was indeed available if he chose to use one. In addition, he "advised [Holtz] of the potential harm that could occur if he was not careful with the machines." Nevertheless, Holtz was injured while operating the machine on May 18, 1989. No other employees were ever injured while using the jointer prior to this occasion.

After the accident, Liukart unsuccessfully attempted to contact Holtz throughout the next six weeks. In late June, Holtz appeared at the plant and informed Liukart that he could return to work on July 4, 1989. After Holtz missed several work days in December, Liukart informed Holtz on December 27, 1989 that he was terminated because of his "unreliability and lack of ability as a pattern maker."

OSHA conducted an inspection at Schutt's plant on September 5, 1989. The relevant results of the inspection provide that "at the time of the amputation injury the machine in question, an Oliver jointer, was being operated without a guard to prevent an entry into the danger area." A citation was thereafter issued to Schutt on September 12, 1989.

II

For his first assignment of error, appellant contends that:

"Where plaintiff-appellant put forth sufficient evidence that the defendant-appellee committed an intentional tort under R.C. Section 4121.80, it is error for the trial court to grant defendant Schutt Pattern Works Company's motion for summary judgment.

"A. First Issue Presented

"Whether defendant-appellee's acts and omissions constituted such intent to injure plaintiff-appellant in violation of R.C. Section 4121.80.

"B.   Second Issue Presented

"Whether defendant-appellee's admission that said Oliver Jointer Wood–Stripping Machine was equipped with an attached guard in place and that at the time of plaintiff-appellant's injury such guard was not present and where defendant-appellee told plaintiff-appellant that a 'guard was available if he desired to use it,' is prima facie evidence that defendant-appellee acted in violation of R.C. Section 4120.80.

"C.   Third Issue Presented

"Whether the trial court erred in granting defendant-appellee's motion for summary judgment when plaintiff established a presumption that defendant committed an intentional tort under R.C. Section 4121.80(G) which the defendant failed to rebut."

■■■  Appellant submits in his first assignment of error that he has put forth sufficient evidence to establish Schutt's intent to injure, thereby rendering summary judgment improper.  The granting of summary judgment is only appropriate if there is no genuine issue as to any material fact, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 201, 24 OBR 426, 428, 494 N.E.2d 1101, 1103; Civ.R. 56(C).  An order granting summary judgment will, therefore, be upheld only where the record discloses no genuine issues of material fact and the moving party is entitled to judgment as a matter of law when construing the evidence most strongly in favor of the nonmoving party.  *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 .O.O.3d 466, 472, 364 N.E.2d 267, 274.  ·In reviewing the granting of summary judgment, an appellate court must apply the same standard as the trial court.  *Id.*

■■■  The degree of proof required to establish that an employer has committed an intentional tort against an employee was provided in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraphs one and two of the syllabus:

"1.   Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowl-

edge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)

"2. To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of the risk—something short of substantial certainty—is not intent. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph six of the syllabus, modified as set forth above and explained.)

In the present case, it is clear that Schutt had some degree of knowledge and appreciation of the risk of harm generated by the use of the Oliver jointer. Guards were available for use but were not present on the machine operated by appellant on May 18, 1989, the day he was injured. In construing all the facts within the record that were before the trial court in a light most favorable to appellant, most notably the fact that Schutt's owner believed that all good pattern makers had fingers missing and yet failed to equip the machines with readily available guards for cost control, we find that reasonable minds could differ concerning whether an intentional tort had been committed by the employer against the employee, specifically, whether the resultant injury was substantially certain to occur. See *Milam v. Tri Cty. Excavating* (May 21, 1992), Cuyahoga App. No. 60685, unreported, 1992 WL 110271. Therefore, we conclude that a genuine issue of fact exists which should be presented to the trier of fact.

Accordingly, the trial court's grant of summary judgment in favor of the appellee is reversed and the cause is remanded for proceedings to be consistent with this opinion.

### III

In his second assignment of error, appellant asserts that:

"Where portions of R.C. Section 4121.80 deny plaintiff-appellant, and other Ohio employees similarly situated, equal protection and due process in violation of the Ohio Constitution and the Fourteenth Amendment of the United States Constitution, such parts of R.C. Section 4121.80 shall be declared void.

"Statement of Issue Presented

"A. Whether R.C. Section 4121.80(G)(3), as written and applied, is unconstitutional as violative of the Equal Protection and Due Process Clauses of the Ohio Constitution and the Fourteenth Amendment of the United States Constitution.

"B. Whether R.C. 4121.80(D), is unconstitutional as violative of the Equal Protection and Due Process Clauses of the Ohio Constitution and the Fourteenth Amendment of the United States Constitution."

Appellant submits that R.C. 4121.80 is unconstitutional as written and applied because it violates the due process and equal protection rights of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution. Appellant further argues that the statute is confusing and misleading.

The Supreme Court of Ohio decided the constitutionality of R.C. 4121.80 in *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722. Therein, the court held that "R.C. 4121.80 exceeds and conflicts with the legislative authority granted the General Assembly pursuant to Sections 34 and 35, Article II of the Ohio Constitution, and is unconstitutional *in toto.*" *Id.*, paragraph two of the syllabus.

Accordingly, the judgment of the trial court is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

JOHN F. CORRIGAN, J., concurs.

KRUPANSKY, J., concurs in judgment only.