**Ida WILLIAMS, Personal Representative of the Estate of Walter W. Neyhart, Appellant,**

v.

**MAMMOTH OF ALASKA, INC., B.C.S.C., Inc., and A.T. & S., L.P., Appellees.**

No. S–6012.

Supreme Court of Alaska.

March 3, 1995.

Rehearing Denied March 23, 1995.

---

Charles W. Coe, Anchorage, for appellant.

Samuel W. Cason and Richard L. Waller, Stone, Waller & Jenicek, Anchorage, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

### I. FACTS AND PROCEEDINGS

A.T. & S., L.P. (A.T. & S.) is a limited partnership organized under the Alaska Uni-

form Limited Partnership Act, AS 32.10.[1] The enterprise manufactures and sells urethane insulation, and sells fiberglass and other industrial insulation. A.T. & S. has one general partner and four limited partners. The general partner is B.C.S.C., Inc. (B.C.S.C.), an Alaska corporation.

In July 1990 Walter Neyhart, an employee of A.T. & S., died in an on-the-job accident. A forklift operator was stacking Comex containerized shipping units, which are the size of semitrailers, in the A.T. & S. warehouse yard. Neyhart was standing between two of the Comex units in the yard area but out of the forklift operator's sight. The forklift operator took a third Comex unit and pushed it and the other two together, crushing Neyhart to death.

A.T. & S. concluded that Neyhart had no statutory beneficiaries, and thus, that it did not have to pay death benefits pursuant to AS 23.30.215, the relevant provision of the Workers' Compensation Act. Accordingly, A.T. & S. paid $10,000 into the Second Injury Fund as required pursuant to AS 23.30.040(c).[2]

The personal representative for Neyhart's estate filed tort claims against A.T. & S., B.C.S.C., and Mammoth of Alaska, Inc. (Mammoth), the firm that leased the forklift to A.T. & S.[3] The complaint alleged that the defendants negligently failed to repair, maintain, and inspect the forklift, and that they were guilty of negligence per se by operating the forklift in violation of state and federal laws designed to ensure the safety of such machinery. Because Mammoth was in bankruptcy, the superior court stayed all proceedings against it, as required under the relevant provision of the federal bankruptcy code, 11 U.S.C. § 362(a). A.T. & S. and B.C.S.C. then moved for summary judgment, contending that as Neyhart's employers, they were immune from tort liability pursuant to AS 23.30.055, the exclusive remedy provision of the Workers' Compensation Act. The superior court granted summary judgment to A.T. & S. and B.C.S.C. and entered a final judgment dismissing the estate's claims pursuant to Civil Rule 54(b). This appeal followed.

A. *B.C.S.C.'s Status As A Separate Entity.*

Neyhart's estate contends that a genuine issue of material fact exists regarding the extent to which B.C.S.C. was acting as a general partner at the time of Neyhart's accident and the extent to which B.C.S.C. was acting as a separate corporate entity.[4] The estate thus argues that it was improper to grant summary judgment as to whether B.C.S.C., as Neyhart's employer, was entitled to protection under the exclusive remedy provision of AS 23.30.055.[5]

1. The Alaska Uniform Limited Partnership Act, AS 32.10, was repealed in 1992 and has since been replaced by AS 32.11, also entitled Alaska Uniform Limited Partnership Act.

2. Alaska Statute 23.30.040(c) states:

> If an employee suffers a compensable injury that results in death and the employee is not survived by a widow, widower, child, or dependent relative eligible to receive death benefits under AS 23.30.215, the employer or insurance carrier shall pay $10,000 to the second injury fund.

3. Neyhart's estate contends that one or more B.C.S.C. officers rented the forklift. The rental agreement lists A.T. & S. alone as the lessee, and bears Shirley Cleveland's signature. Shirley Cleveland is president of B.C.S.C.

4. B.C.S.C. contends that Neyhart's representative did not raise this issue below or in the points on appeal, and that she thus waived the issue.

Review of the record shows that Neyhart's representative raised this issue before the superior court as well as in her points on appeal.

5. Alaska Statute 23.30.055 provides:

> **Exclusiveness of liability.** The liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and any fellow employee to the employee, the employee's legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death. The liability of the employer is exclusive even if the employee's claim is barred under AS 23.30.022. However, if an employer fails to secure payment of compensation as required by this chapter, an injured employee or the employee's legal representative in case death results from the injury may elect to claim compensation under this chapter, or to maintain an action against the em-

The estate attempts to analogize the present case to *Croxton v. Crowley Maritime Corp.*, 817 P.2d 460 (Alaska 1991) (*Croxton II*). *Croxton II* involved a plane crash that resulted in the death of the copilot, an employee of a subsidiary corporation. *Id.* at 461. The representative of the copilot's estate filed a wrongful death claim against the subsidiary's parent corporation, alleging that an employee of the parent negligently assigned an inexperienced pilot to the flight. Disregarding corporate form, the superior court ruled that the parent's employee was in substance an employee of the subsidiary, so that the exclusive remedy provision of AS 23.30.055 barred the wrongful death suit. *Id.* at 461–62.

We overturned the superior court's determination on the ground that those who elect to incorporate their business ventures cannot avoid the consequences of their chosen form of organization. *Id.* at 464–65. Our determination turned upon the recognition of the parent corporation and the subsidiary corporation as separate legal entities under Alaska law. *Id.* at 462.

 Because that appeal involved separate legal entities, *Croxton II* is inapposite to the situation here in which a partnership employee is attempting to assert a common law tort claim against an individual partner. The nearly universal rule is that if the employer is a partnership, then each partner is an employer of the partnership's employees. This is because a partnership is not a legal entity separate from its partners. *See, e.g.,*

*Swiezynski v. Civiello,* 126 N.H. 142, 489 A.2d 634, 637 (1985); *Brebaugh v. Hales,* 788 P.2d 1128, 1135 (Wyo.1990); 2A Arthur Larson, *The Law of Workmen's Compensation* § 72.15 (1993). The rationale for this rule is that, as a matter of law, partners have equal rights in the management of the partnership business unless the partnership agreement provides otherwise. *See* AS 32.05.130(5). Thus, each partner has an equal right to control an employee's work performance, and each partner is liable for an employee's workers' compensation claim. *E.g., Swiezynski,* 489 A.2d at 637.[6] Allowing employees a third-party claim against a partner would require partners to bear the cost of workers' compensation insurance without the accompanying immunity from employee tort claims, thereby frustrating one of the policies behind the Workers' Compensation Act. *Id.*[7] Thus, the exclusive remedy provision of AS 23.30.055 of the Workers' Compensation Act bars an employee's common law tort claim against a partnership partner in those instances where a partner's negligence arises out of and is within the course of partnership business. *Brebaugh,* 788 P.2d at 1135; 2A Larson, *supra,* § 72.15.[8]

Furthermore, we have explicitly rejected the "dual capacity" doctrine. The "dual capacity" doctrine is the theory that an employer, apparently protected under the exclusive remedy provision of AS 23.30.055, may nonetheless incur tort liability to an employee if, with regard to that tort, the employer holds a position that imposes obligations independent and distinct from its role as employer.

ployer at law or in admiralty for damages on account of the injury or death. In that action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of the employment, or that the injury was due to the contributory negligence of the employee.

6. In the circumstance where the partner is carrying on partnership business, "the partnership is liable for the ... injury to the same extent as the partner so acting." AS 32.05.080.

7. We articulated this policy in *State v. Purdy,* 601 P.2d 258 (Alaska 1979), as follows:

One general purpose of workmen's compensation is to provide an assured recovery to an injured employee without regard to notions of

fault. In return for the certainty of payment, the law makes the liability exclusive, i.e., it is in place of all other liability to which the employer might be subjected because of the injury. As we observed in *Gordon v. Burgess Construction Co.*, 425 P.2d 602, 604 (Alaska 1967):

[T]he remedies provided by a workmen's compensation act are intended to be in lieu of all rights and remedies as to a particular injury whether at common law or otherwise.

*Id.* at 259 (footnotes omitted).

8. A partner need not be a natural person; therefore, a corporation may be a partner. *See* Uniform Partnership Act § 6 cmt., 6 U.L.A. 23 (1969) (§ 6 of the Uniform Partnership Act was adopted verbatim by the Alaska Legislature at AS 32.05.010). Thus B.C.S.C. is a partner and an employer.

*State v. Purdy,* 601 P.2d 258, 259–60 (Alaska 1979).[9]

■ As the general partner in A.T. & S., a limited partnership, B.C.S.C. was Neyhart's employer at the time of the accident. Thus, we hold that the superior court did not err in granting B.C.S.C.'s summary judgment motion on the ground that at the time of Neyhart's death B.C.S.C. was his employer and entitled to the exclusive liability protection afforded by AS 23.30.055.

### B. *A.T. & S.'s Alleged Intentional Torts.*

■ The estate next contends that A.T. & S.'s violations of state and federal safety regulations regarding the operation of the forklift constituted the commission of an intentional tort against Neyhart. An exception to the exclusivity provisions of AS 23.30.055 exists in cases of an employer's, or fellow employee's, intentional torts committed against the employee. *Van Biene v. ERA Helicopters, Inc.,* 779 P.2d 315, 318 (Alaska 1989). In *Van Biene* this court adopted the majority rule that an employer's violation of government safety regulations, even if willful and knowing, does not rise to the level of an intentional tort. *Id.* at 318–19; *see also* 2A Larson, *supra* § 68.13.[10]

The estate responds that this court has failed "to address the spectrum of other actions which are reckless indifferences to the safety of workers." The estate also cites authority for the minority view that an employer's intentional violations of safety regulations may support a finding of intent to harm an employee. *See, e.g., Holtz v. Schutt Pattern Works Co.,* 89 Ohio App.3d 663, 626 N.E.2d 1029, 1032 (1993); 2A Larson, *supra,* § 68.13 n. 10 and § 68.15.

In *Holtz,* the court held that an employer's violation of safety standards constitutes an intentional tort if the employer knowingly

---

9. Even if we accepted the dual capacity doctrine, the estate has failed to show that a genuine issue of material fact exists as to whether B.C.S.C. acted as a separate entity. The only possible basis advanced by the estate in support of its argument that B.C.S.C. was acting as a separate entity—apparently as a subcontractor—is the presence of B.C.S.C. employees on the job site. This argument fails for several reasons. First, the record contains no evidence that B.C.S.C. employees alone worked in the A.T. & S. yard at the time in question. To support its argument, the estate relies solely upon an assertion in its statement of genuine issues of material fact. Because this assertion is not a statement made under oath, it is not relevant to our review of the superior court's grant of summary judgment. *See, e.g., Alaska Rent-A-Car, Inc. v. Ford Motor Co.,* 526 P.2d 1136, 1139 n. 3 (Alaska 1974). Second, as B.C.S.C.'s brief correctly notes, the record contains no evidence that B.C.S.C. "had a contract or other relationship with A.T. & S. outside of its role as general partner."

10. In *Van Biene v. ERA Helicopters, Inc.,* 779 P.2d 315, 318–19 (Alaska 1989), we reversed a Civil Rule 12(b)(6) dismissal. There we stated:

We conclude that these allegations fail to constitute the type of intentional tort actionable outside the workers' compensation system. Liberally construed, the facts alleged fail to make out an intentional tort. At best, the complaint alleges gross negligence or wilful and knowing violation of FAA regulations. The vast majority of courts have held that such allegations do not constitute an intentional act allowing suit outside of the workers' compensation act. As Professor Larson notes:

Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.

. . . .

Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.

2A A. Larson, *Larson Workmen's Compensation* § 68.13, at 13–8 to –26 (1983 & Supp.1985) (footnotes omitted).

In [*Stafford v. Westchester Fire Insurance Co.,* 526 P.2d 37 (Alaska 1974), *overruled on other grounds,* 556 P.2d 525 (Alaska 1976),] we recognized this majority rule. As the court explained, suits for intentional torts have been permitted on the grounds that the harm is not accidental but "[a] stiff burden is placed on the employee to demonstrate intent to harm by the employer, or in some cases by his agents." 526 P.2d at 43 n. 29.

subjects an employee to a dangerous process, procedure, instrumentality, or condition with knowledge that harm to the employee will be a substantial certainty. *Holtz,* 89 Ohio App.3d at 667–68, 626 N.E.2d at 1032. Even assuming that we were receptive to modifying the rule we adopted in *Van Biene* and following *Holtz,* there is simply no evidence referred to in the estate's opposition to B.C.S.C.'s motion for summary judgment that would justify a finding that A.T. & S. violated safety standards with knowledge that harm to an employee would be a substantial certainty.[11] Thus, we hold that the superior court correctly rejected the estate's contention that the exclusivity provision of AS 23.30.055 is inapplicable to this case under the intentional tort exception.

### C. *The Propriety Of The Superior Court's Entry Of A Rule 54(b) Judgment.*

■ Neyhart's estate asserts that the superior court erred in granting final judgment in favor of A.T. & S. and B.C.S.C. while Mammoth was still in bankruptcy. Specifically, the estate contends that the grant of final judgment is contrary to Civil Rule 54(b), in that the judgment causes the estate prejudice and promotes judicial inefficiency.[12]

■ We review an entry of judgment under Rule 54(b) for abuse of discretion. *S*

& B Mining Co. v. Northern Commercial Co.,* 813 P.2d 264, 269 (Alaska 1991). Typically, use of Rule 54(b) is appropriate only if the party seeking judgment is likely to suffer actual hardship otherwise. *Johnson v. State,* 577 P.2d 706, 710 (Alaska 1978).[13]

Before the superior court, A.T. & S. and B.C.S.C. argued that because there was no indication as to when Mammoth's bankruptcy stay would be lifted, evidence in this action would grow stale. Furthermore, they argued that the threat of outstanding litigation would likely chill their business opportunities because of consequent difficulties in arranging financing, obtaining insurance, and attracting trading partners. Finally, A.T. & S. and B.C.S.C. argued that the issues to be resolved in the motion for a Rule 54(b) judgment did not affect the merits of the estate's claims against Mammoth.

We hold that the superior court did not abuse its discretion in entering a Rule 54(b) judgment. The superior court expressly found that no just reason existed to delay the entry of final judgment as to A.T. & S. and B.C.S.C. Additionally, the superior court's entry of the Rule 54(b) judgment involved the sole legal issue of immunity under the exclusive remedy provisions of AS 23.30.055. The superior court resolved no factual issue that would prejudice the estate's claims

**11.** Examination of the record discloses that the estate's opposition was based exclusively upon an unsigned affidavit of Ron Lopez, the forklift operator at the time of the accident. (For purposes of deciding this appeal we assume that the affidavit was properly executed.) In this affidavit Mr. Lopez makes the following assertions: that the forklift had a broken window, lacked a backup bell, and had no horn; that the forklift's fire extinguisher was never inspected; that the forklift's forks were too narrow to fit under the Comex boxes; that when he had a Comex box on the forks he could not see anything; that while working the forklift he was never escorted; that hard hats were not required in the yard; and that the men's bathroom was out of order so a lot of the men were required to use the yard to relieve themselves.

**12.** Alaska Civil Rule 54(b) states in relevant part:

When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but

fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Neyhart's representative also contends that the final judgment is contrary to Alaska Civil Rule 19, because A.T. & S. and B.C.S.C. are indispensable parties as to the litigation with Mammoth. This contention is without merit. Rule 19 expressly pertains only to joinder of parties, not to dismissal of parties through a Rule 54(b) judgment.

**13.** When construing analogous Federal Rule of Civil Procedure 54(b), federal courts consider "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once." *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980). The superior court should not grant a Rule 54(b) judgment merely because a party requests one. *Johnson,* 577 P.2d at 710.

against Mammoth. Also, the exclusivity issue will not arise in more than one appeal because Mammoth cannot reasonably assert that it was Neyhart's employer. Finally, the superior court could properly consider the delay resulting from an indefinite stay or continuance in deciding whether to enter a Rule 54(b) judgment. *See Jefferson v. Spenard Builders' Supply, Inc.*, 366 P.2d 714, 716 (Alaska 1961). Therefore, we conclude that the superior court did not abuse its discretion in entering final judgment pursuant to Civil Rule 54(b).[14]

AFFIRMED.

14. Our disposition makes it unnecessary to address the issue of whether the representative for Neyhart's estate has standing to bring this suit. That issue concerns whether A.T. & S.'s payment of $10,000 into the Second Injury Fund pursuant to AS 23.30.040(c) operated as an assignment to A.T. & S. of all claims against third parties stemming from Neyhart's accidental death.