Stanley C. FENNER, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Division of Public Works, Office of Street Maintenance and Vince Mee, Superintendent, Appellees.

No. S–10064.

Supreme Court of Alaska.

Aug. 23, 2002.

Sanford M. Gibbs, Brown, Waller & Gibbs, P.C., Anchorage, and P. Dennis Maloney, P. Dennis Maloney, P.C., Anchorage, for Appellant.

Scott H. Leuning, Clapp, Peterson & Stowers, LLC, Anchorage, for Appellees.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Stanley C. Fenner was hurt while operating a snowplow for the Municipality of Anchorage in 1997. After receiving workers' compensation benefits, Fenner filed suit against the municipality in superior court. The superior court granted the municipality summary judgment under the exclusive remedy provision of the workers' compensation act. Because the superior court did not err, we affirm the grant of summary judgment to the municipality.

## II. FACTS AND PROCEEDINGS

On December 15, 1997 Stanley C. Fenner, a snowplow operator for the Municipality of Anchorage, was injured when his plow struck a high sewer cleanout, or manhole, injuring his ribs and chest. Although Fenner received workers' compensation benefits for his injury, he filed suit against the Municipality of Anchorage and Vince Mee, the Superintendent of the Office of Street Maintenance (collectively "the municipality") on December 14, 1999 in superior court.

The municipality filed a motion to dismiss Fenner's complaint pursuant to Rule 12(b)(6). The municipality argued that Fenner's claims were barred by the exclusive remedy provision of the Alaska Workers' Compensation Act (the Act), AS 23.30.055. In response, Fenner filed a second amended complaint, joining Anchorage Water & Wastewater Utility (AWWU) and Pacific North Equipment Alaska Company, and its branch manager, Fred Gayton.

In that complaint, Fenner alleged four claims: intentional tort against the municipality, intentional tort against AWWU, negligence against Pacific North and Gayton, and strict liability against Pacific North and Gayton. Fenner's allegations consisted of three actions by the municipality that he argued, taken in combination, rose to the level of an intent to harm: (1) the decision to discontinue the practice of assigning drivers to specific parts of town; (2) the reduction of budget allocations to lower high manholes; and (3) the replacement of bolts attaching the cutting edge to the plow with bolts that allegedly did not break as easily thereby increasing the risk of harm to operators.

At the same time that he filed the second amended complaint, Fenner filed an opposition to the municipality's motion to dismiss, arguing that the municipality's actions constituted an intentional tort, taking his claim outside the scope of the Act. Fenner also urged the superior court to adopt the "substantial certainty" test to determine whether the municipality's actions constituted an intentional tort. In reply, the municipality argued that the superior court should consider its motion to be a motion for summary judgment, that the test to be used by the superior court in determining whether the municipality acted intentionally was "specific intent to harm," that Alaska does not recognize the

"substantial certainty" test, and that Fenner did not allege an intentional tort.

Superior Court Judge Peter A. Michalski granted summary judgment to the municipality and AWWU, which he found .to be an entity of the municipality. Judge Michalski found that the actions alleged by Fenner did not rise to the level of intent to harm needed to maintain an action outside the workers' compensation act. The court further stated that the decisions of the municipality were budgetary and efficiency decisions that "cannot and do not constitute the equivalence of an intent to harm." Final judgment was entered against Fenner on January 22, 2001. Fenner appeals.

## III. STANDARD OF REVIEW

A superior court's order granting a motion for summary judgment is reviewed *de novo*.[1] We will affirm a grant of summary judgment if there are no genuine issues of material fact and if the moving party is entitled to summary judgment as a matter of law.[2]

## IV. DISCUSSION

### A. Fenner's Claim Was Barred by the Exclusive Remedy Provision of the Worker's Compensation Act.

Fenner argues that the trial court erred in granting summary judgment to the municipality and AWWU as he showed "that he was the victim of an intentional act of the municipality," placing genuine issues of material fact in dispute and making the question of intent one for the jury. Fenner states that

we have adopted the "substantial certainty" standard to determine whether a tort is intentional in the realm of the workers' compensation system. Although he argues that there was direct evidence of the municipality's intent to injure, Fenner submits that we should use the "substantial certainty" standard established by the Michigan Supreme Court allowing the law to infer intent, which he claims we have already adopted.

### 1. The intentional tort exception to the exclusive remedy provision of the act

For injuries incurred in the workplace, an employer is liable to employees for the payment of the compensation due under the Act.[3] This payment is due irrespective of fault.[4] Under AS 23.30.055, this liability is the exclusive remedy for an employee injured during the course of employment.[5]

However, we have held that this exclusive remedy provision does not apply where an employee commits an intentional tort against a fellow worker.[6] We found that the "socially beneficial purpose of the work[ers'] compensation law would not be furthered by allowing a person who commits an intentional tort to use the compensation law as a shield against liability."[7] We have permitted recovery for intentional torts "on the theory that the harm is not accidental and therefore not covered by the act."[8]

### 2. We have not adopted the substantial certainty test.

Fenner argues that we did not set out any guidelines regarding the quantum or quality

1. *White v. State, Dep't of Natural Res.,* 14 P.3d 956, 959 (Alaska 2000).

2. *Calhoun v. State, Dep't of Transp. & Pub. Facilities,* 857 P.2d 1191, 1193 (Alaska 1993).

3. AS 23.30.045(a).

4. AS 23.30.045(b).

5. AS 23.30.055 provides, in part:
   The liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and any fellow employee to the employee, the employee's legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise

entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death....

6. *Elliott v. Brown,* 569 P.2d 1323, 1327 (Alaska 1977) (holding that an employee could sue an employer for an assault and battery inflicted by a co-worker and occurring on the premises of the place of employment).

7. *Id.*

8. *Stafford v. Westchester Fire Ins. Co.,* 526 P.2d 37, 43 n. 29 (Alaska 1974), *overruled on other grounds, Cooper v. Argonaut Ins. Cos.,* 556 P.2d 525 (Alaska 1976).

of evidence necessary to create an issue of fact as to whether there was substantial certainty that an employer's actions would lead to an employee's injury constituting an intentional tort until *Williams v. Mammoth of Alaska*[9] when we adopted the "substantial certainty" standard of the Michigan Supreme Court. Fenner asserts that the "substantial certainty" standard defines intentional tort as occurring when the employer knows the consequences of its act "are certain or substantially certain to cause injury" yet still acts.

The municipality, however, argues that we require actual intent to injure before an employee escapes the workers' compensation system. It states that, rather than adopting a "substantial certainty" standard, *Mammoth* reaffirmed prior holdings of this court requiring a showing of actual intent.

We have placed a "stiff burden" on employees attempting to demonstrate an intent to harm.[10] In *Van Biene v. ERA Helicopters, Inc.*,[11] we stated that we adopted the majority rule defining a tort intentional enough to take an employee outside the workers' compensation system.[12] In adopting this standard, we noted that the majority of jurisdictions had held that allegations constituting gross negligence or willful and knowing violation of regulations did not rise to the level of an intentional tort.[13] We also approved of Professor Larson's statement that

> [s]ince the legal justification for the common-law action is the non-accidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the

gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.

. . . .

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.[14]

In *Mammoth* we stated that we adopted the majority rule that "an employer's violation of government safety regulations, even if willful and knowing, [did] not rise to the level of an intentional tort" in *Van Biene*.[15] The estate in *Mammoth* argued that we had failed to address the spectrum of other actions which are in reckless indifference to the safety of workers, as well as the minority view that an "employer's intentional violations of safety regulations may support a finding of intent to harm an employee."[16] We discussed the substantial certainty doctrine in relation to an Ohio case,[17] stating that Ohio held that an employer's violation of safety standards constituted an intentional tort where the employer knowingly subjects an employee to something dangerous with knowledge that harm would be a substantial certainty.[18] In *Mammoth* we went on to say, "[e]ven assuming that we were receptive to modifying the rule we adopted in *Van Biene* and following *Holtz*," there was no evidence to support a finding of intent to harm as a

---

9. 890 P.2d 581 (Alaska 1995).

10. *Stafford*, 526 P.2d at 43 n. 29.

11. 779 P.2d 315 (Alaska 1989).

12. *Id.* at 319.

13. *Id.* at 318.

14. *Id.* at 318–19 (quoting A. LARSON, LARSON WORKMEN'S COMPENSATION § 68.13, at 13–8 to –26 (1983 & Supp.1985)) (alteration in original).

15. 890 P.2d at 585.

16. *Id.*

17. *Holtz v. Schutt Pattern Works Co.*, 89 Ohio App.3d 663, 626 N.E.2d 1029 (1993).

18. *Id.* at 585–86.

substantial certainty in the facts before the court.[19]

■ Our decisions in *Van Biene* and *Mammoth* were further elucidated in *Christensen v. NCH Corp.*[20] In that case, we held that the employee, Christensen, had to allege intentional harm on the part of NCH before he could pursue a claim outside the workers' compensation system.[21] In the context of the exclusive remedy provision of the Act, "an intentional harm is a harm committed by a person who acts with a specific intent to cause an injury."[22]

■ Our exception to the exclusive remedy provision of the Act is therefore limited to intentional torts where an employer has a specific intent to injure an employee. Fenner's contention, therefore, that we adopted the substantial certainty test to determine intent, is incorrect.

### 3. The municipality did not specifically intend to injure Fenner.

■ In his opposition to the municipality's motion to dismiss, Fenner attached nearly seventy pages of exhibits for the court to consider. The superior court, therefore, properly reviewed the municipality's motion as a motion for summary judgment under Rule 56.[23] Fenner submitted a number of memos from the municipality, many of which were sent after Fenner's accident, regarding the Department of Public Works and Risk Management.

With his first amended complaint, Fenner submitted an affidavit from Chris Kloep, a former snowplow operator with the municipality. In his affidavit, Kloep described Mee's actions and statements on behalf of the municipality, particularly his decisions to change operators' plow routes and to reduce the budget for lowering high manholes and an alleged statement in 1995, two years before Fenner's accident, wishing injury onto snowplow operators.

It is not clear which of these documents the superior court considered during its decision. However, even taken altogether, Fenner's submissions do not amount to a specific intent to harm under our cases[24] and the superior court did not err in finding no genuine issues of material fact.

■ The violation of OSHA regulations alleged by Fenner to constitute part of his claim of intent to injure did not occur until January and February 1999, long after Fenner incurred his injury in 1997. Kloep alleged that Mee made a statement wishing injury on snowplow operators in January or February 1995, nearly three years before Fenner's December 1997 accident. Further, none of the documents submitted by Fenner indicates that the municipality's decisions to change which operators plowed which streets, to reallocate its budget, or to replace snowplow bolts were done with the specific intent to cause Fenner's injury.

In fact, of the twenty-five exhibits submitted by Fenner, only three were dated before his accident. One was a 1982 memo regarding frost adjustable grade rings and the other two were November 1997 memos regarding plows that hit high utilities after the second plowing that winter and the costs associated with those hits. None of these three documents mentioned Fenner. Given that Fenner never submitted any evidence that the municipality specifically intended to cause his injuries with its plowing and manhole decisions, the superior court did not err in finding that Fenner did not raise a genuine issue of material fact alleging an inten-

---

19. *Id.* at 586.

20. 956 P.2d 468 (Alaska 1998).

21. *Id.* at 475.

22. *Id.*

23. *See* Alaska R. Civ. P. 12(b).

24. *Williams v. Mammoth of Alaska, Inc.,* 890 P.2d 581 (Alaska 1995) (holding that employer's intentional violation of safety regulations does not constitute intentional tort); *Van Biene v. ERA Helicopters,* 779 P.2d 315 (Alaska 1989) (holding that employer's order that pilots fly in violation of FAA flight time and duty regulations failed to constitute intentional tort); *Elliott v. Brown,* 569 P.2d 1323 (Alaska 1977) (holding where employer hit and shoved employees, actions were intentional enough to take case outside worker's compensation system).

tional tort for him to escape the confines of the workers' compensation system.[25]

### B. The Superior Court Did Not Abuse Its Discretion in Refusing Fenner's Oral Motion for Discovery Before Granting Summary Judgment to the Municipality.

 Fenner argues that the trial court should have delayed its ruling on the municipality's motion for summary judgment until discovery had been completed, as neither party had even made initial disclosures under Rule 26(a) when judgment was entered. Fenner states that his inability to develop a factual record to support his claims should have resulted in the court's *sua sponte* continuance of the case once it determined that the municipality's Rule 12(b)(6) motion would be treated as a motion for summary judgment.

Fenner's allegations, even if true, are not sufficient to remove his case from the workers' compensation system via the intentional tort exception. Delaying ruling on the motion for summary judgment, then, would have been of no benefit to Fenner. As such, the trial court did not abuse its discretion in denying Fenner more time to complete discovery.

### C. Fenner Has Not Properly Raised the Issue of Sovereign Immunity.

 Fenner argues in this court that the municipality claimed its decisions in regard to the scope and method of plowing decisions were discretionary and not subject to tort liability, and attacks that claim.[26] We need not reach this issue, however, because Fenner did not sufficiently raise it below[27] nor include it in his points on appeal. In these circumstances, the point is waived.[28]

25. *Christensen v. NCH Corp.,* 956 P.2d at 474 (stating that "[m]ere assertions of fact in pleadings and memoranda cannot raise genuine issues of material fact" so as to avoid summary judgment).

26. This is a preemptive attack by Fenner on a potential defense of the municipality. Given our resolution of the exclusive remedy issue, this issue is moot.

## V. CONCLUSION

Because the trial court did not err in granting the municipality summary judgment under the exclusive remedy provision of the workers' compensation act, we AFFIRM.

MATTHEWS, Justice, not participating.

27. Fenner's only mention of the issue occurred in a brief footnote in his opposition to the municipality's motion to dismiss, which footnote itself argued that the court should not consider sovereign immunity.

28. *Winn v. Mannhalter,* 708 P.2d 444, 449 (Alaska 1985).