Hollis VAN BIENE, Personal Representative of the Estate of Michael Brian Van Biene, and Stanley Thomson, Personal Representative of the Estate of Stanley Mark Thomson, Appellants,

v.

ERA HELICOPTERS, INC.; Employers Insurance of Wausau; Rowan Companies, Inc.; Intercontinental Dynamics Corporation; Gates Learjet, Appellees.

No. S–2571.

Supreme Court of Alaska.

Aug. 18, 1989.

Robert H. Wagstaff, Wagstaff, Pope & Clocksin, Anchorage, for appellants.

Clark Reed Nichols, Perkins, Coie, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

## I. INTRODUCTION

This appeal arises out of litigation by the estates of two airline pilots who died in an airplane crash while employed by ERA Helicopters, Inc. (ERA). The estates seek recovery against ERA for the intentional tort of "overworking" the two deceased pilots and against Employers Insurance of WAUSAU (WAUSAU), ERA's workers' compensation carrier, for its negligence in the inspection, certification, authorization, and approval of ERA's working conditions.

For the reasons set forth below, we affirm the trial court's dismissal of the claims against ERA and the claims against the "Doe defendants." We reverse the trial court's dismissal of the claims against WAUSAU.

## II. FACTS AND PROCEEDINGS

Stanley Thomson and Michael Van Biene were pilots employed by ERA. At 2:00 a.m. on August 20, 1985, ERA dispatched them to fly a Learjet to Gulkana, Alaska. By completing this mission, Thomson and Van Biene would necessarily violate the Federal Aviation Administration's (FAA) flight time and duty regulations. The Learjet crashed on approach to the Gulkana airport, killing both pilots. WAUSAU paid compensation for the pilots' deaths.

In the investigation of the accident, other ERA pilots told the National Transportation Safety Board (NTSB) of lengthy on-duty periods and exhausting flight sched-

ules. Three captains reported ERA's disapproval of pilots' refusals to fly because they were fatigued. One captain believed that ERA intentionally overworked its pilots to increase its profits.

On September 14, 1987, the estates filed their Second Amended Complaint alleging negligence against WAUSAU in their inspection, certification, authorization, and approval of ERA's working conditions. The complaint made the following allegations against ERA:

> On or about August 20, 1985, at 0205 AKDT, Stanley Thomson and Michael Van Biene were Captain and First Officer of Learjet N455JA which was dispatched by defendants ERA, Jet Alaska, and ROWAN for a night flight to Gulkana, Alaska. The mission dispatch was accomplished without obtaining current weather information and would necessarily exceed the flight time and duty requirements of Plaintiffs, and the aircraft was overweight for appropriate landing. The dispatch of the aircraft under the conditions described and given the preceding flying time of Plaintiffs without rest or sleep, constitutes negligence and gross negligence.

The estates contended at oral argument before the trial judge, and on appeal, that this language alleges an "intentional tort of dispatching [the deceased pilots] for a night flight ... without adequate rest or sleep." ERA argues that the complaint only alleges negligence against it as an employer, and that therefore, the claim is barred by the exclusivity provision of the Alaska Workers' Compensation Act, AS 23.30.055.

The estates argue that WAUSAU is a separate legal entity from the employer and thus may be sued for its own negligence as a third party pursuant to AS 23.30.015(a). In response, WAUSAU argues that the exclusivity doctrine also protects it from such a negligence claim and that regardless of any immunity protection, WAUSAU did not owe a duty to the decedents to inspect, certify, authorize or approve ERA's working conditions.

The superior court granted ERA and WAUSAU's motions to dismiss under Civil Rule 12(b)(6) on the ground that the Alaska Workers' Compensation Act provides the workers' exclusive remedy against an employer or its compensation insurer. The estates appeal.

## III. DISCUSSION

A. Did the Court Err in Dismissing the Estates' Claims Against ERA under Civil Rule 12(b)(6) Instead of Treating It as One for Summary Judgment Under Civil Rule 56?

The estates argue that the trial judge should have treated ERA's motion to dismiss as one for summary judgment because ERA submitted affidavits and the court did not expressly or affirmatively rule that it was not considering this evidence outside the pleadings.

Civil Rule 12(b) states that when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56." When material outside the pleadings is presented to the trial court, a motion to dismiss "is automatically converted into one for summary judgment unless the court 'affirmatively' and 'expressly' rules that it is not considering evidence outside of the pleadings." *Adkins v. Nabors Alaska Drilling, Inc.*, 609 P.2d 15, 21 n. 11 (Alaska 1980).

From our review of the remarks of the judge and counsel during oral argument, we conclude that Judge Ripley expressed his intention not to rely on the affidavits when granting the motion to dismiss. Consequently, the court correctly dismissed the claims under Rule 12(b)(6) rather than Rule 56.

B. Did the Court Err in Holding that the Estates' Claim Against ERA Was Barred by the Exclusivity Doctrine of AS 23.30.055?

1) Standard of Review

"A motion to dismiss for failure to state a claim is viewed with disfavor and should

rarely be granted." *Mattingly v. Sheldon Jackson College*, 743 P.2d 356, 359 (Alaska 1987) (citing *Knight v. American Guard & Alert, Inc.*, 714 P.2d 788, 791 (Alaska 1986)). "In determining the sufficiency of the stated claim it is enough that the complaint set forth allegations of fact consistent with and appropriate to some enforceable cause of action." *Linck v. Barokas & Martin*, 667 P.2d 171, 173 (Alaska 1983). The court "is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Mattingly*, 743 P.2d at 359 (emphasis deleted).

### 2) Application of Exclusivity Doctrine to Intentional Torts of the Employer

■ Under AS 23.30.055, the liability of an employer under the Workers' Compensation Act "is exclusive and in place of all other liability of the employer and any fellow employee to the employee, the employee's legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from the employer or fellow employee." *See Wright v. Action Vending Co., Inc.*, 544 P.2d 82, 85 (Alaska 1975).

In *Elliott v. Brown*, 569 P.2d 1323 (Alaska 1977), we recognized an exception to the exclusivity doctrine in cases of intentional torts committed by a fellow employee or employer. We found that the socially beneficial purposes of the workers' compensation law "would not be furthered by allowing a person who commits an intentional tort to use the compensation law as a shield against liability." *Id.* at 1327. The court concluded that the fellow employee's assault on the worker fell outside the purview of the accidental injuries covered by the act. The worker was therefore permitted to pursue a common-law tort action against the fellow employee.[1] Similarly, in *Stafford v. Westchester Fire Insurance Co.*, 526 P.2d 37, 43 n. 29 (Alaska 1974), *overruled on other grounds*, 556 P.2d 525 (Alaska 1976), we noted that:

In suits for other intentional torts committed by the employer, recovery is permitted on the theory that the harm is not accidental and therefore not covered by the act. A stiff burden is placed on the employee to demonstrate intent to harm by the employer, or in some cases by his agents.

■ The estates argue that the trial court erred in dismissing their claims against ERA since they allege an intentional tort which is not barred by the exclusivity doctrine. ERA argues that the complaint fails to allege an intentional tort by ERA.

The estates' Second Amended Complaint alleges that ERA violated a number of FAA regulations and that "given the preceding flying time of Plaintiffs without rest or sleep, [dispatching the flight] *constitute[d] negligence and gross negligence.*" (Emphasis added). Paragraph IX generally alleges:

Defendants' actions as described and in other particulars as to be shown at trial constitute wilful misconduct and were jointly and separately negligent, gross, and wanton.

The estates contend that the complaint alleges an intentional tort of dispatching the deceased pilots for a night flight without adequate rest or sleep.

We conclude that these allegations fail to constitute the type of intentional tort actionable outside the workers' compensation system. Liberally construed, the facts alleged fail to make out an intentional tort. At best, the complaint alleges gross negligence or wilful and knowing violation of FAA regulations.

The vast majority of courts have held that such allegations do not constitute an intentional act allowing suit outside of the workers' compensation act. As Professor Larson notes:

Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot, under

---

1. The *Elliott* court, however, held that the corporate employer was not liable in tort on a

theory of respondeat superior for the intentional tort of its supervisor. 569 P.2d at 1325-26.

the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.

. . . . .

Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.

2A A. Larson, *Larson Workmen's Compensation* § 68.13, at 13–8 to –26 (1983 & Supp.1985) (footnotes omitted).

In *Stafford* we recognized this majority rule. As the court explained, suits for intentional torts have been permitted on the grounds that the harm is not accidental but "[a] stiff burden is placed on the employee to demonstrate intent to harm by the employer, or in some cases by his agents." 526 P.2d at 43 n. 29.

Even under a liberal interpretation of the allegations made by the complaint, the estates fail to allege an intent to harm the pilots so as to overcome the exclusivity provision of the act. In conclusion, we affirm the trial court's dismissal of the claims against ERA under Rule 12(b)(6).

C. Did the Court Err in Holding that the Exclusivity Doctrine Contained in AS 23.30.055 Bars a Negligence Action Against the Employer's Workers' Compensation Carrier, WAUSAU?

■ The estates argue that WAUSAU is a separate legal entity from the employer and thus may be sued for its own negligence as a third party pursuant to AS 23.30.015(a). In response, WAUSAU argues that the exclusivity doctrine protects it from such a negligence claim.

The issue of whether a workers' compensation carrier can be sued for its own negligence in inspecting the employer's workplace is a question of first impression in Alaska. This court considered a related but distinctly different issue in *Stafford*. The court considered whether an employee was barred from suing his or her employer's compensation carrier for intentional torts. *Stafford* had alleged that the carrier wilfully and maliciously withheld compensation benefits resulting in infliction of emotional distress. The court concluded that "[u]nder our compensation act the carrier is considered a separate entity from the employer." 526 P.2d at 42. The court, however, then noted:

> Stafford recognizes that the principle of subrogation may be utilized to conclude that the carrier derives immunity from the exclusive remedy provisions in a damage action brought by the employee. However, Stafford argues that this immunity should not extend to intentional torts. This is supported by the decision of the Supreme Court of California in *Unruh v. Truck Insurance Exchange*, in which suit for an intentional tort by an injured employee against her employer's compensation carrier was allowed.

*Id.* (footnote omitted). After discussing the reasoning in *Unruh v. Truck Insurance Exchange*, 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972), the court concluded:

> We believe that AS 23.30.155 was envisioned by Alaska's legislature to cover situations where the employer or carrier negligently, or wilfully, failed to make timely compensation payments, but that this section was not intended to operate as the exclusive remedy for all intentional wrongdoings. In so holding we adopt the reasoning of *Unruh*. In circumstances where there is tortious conduct that goes beyond the bounds of untimely payments, the immunity from suit provided by the Workmen's Compensation Act is lost. Normally the carrier must investigate claims in order that the compensation scheme of payments for actual injuries will be properly administered. However, intentional torts committed in

connection with the investigation of claims and payment thereof are not to be protected. Stafford has alleged that Westchester did more than delay in making benefit payments; he has asserted that it intentionally and maliciously misled him about his right to compensation and discouraged him from exercising his rights, resulting in emotional injury. We conclude that Stafford is not precluded, by virtue of AS 23.30.155, from a trial on the merits of his claims.

526 P.2d at 43–44.

We conclude that the *Stafford* court did not decide the issue in this case: whether the exclusivity provision bars suit against an insurance carrier for negligent inspection of an employer's workplace. First, the court did not expressly hold that the immunity extends to a carrier. Rather, the court accepted *arguendo* that the doctrine of subrogation *might* be utilized to conclude that the carrier derives immunity from the exclusive remedy provisions. However, the court held that regardless of whether such immunity existed, intentional torts committed in the investigation of claims and payment thereof were actionable. *Id.* at 43–44.

While *Stafford* relied on the reasoning of *Unruh*, this should not be construed as an acceptance of the California courts' interpretation of its workers' compensation scheme since the Alaska scheme differs significantly from the California scheme.[2] Unlike the Alaska scheme, the California statute explicitly defines "employer" to include "insurer." Cal.Lab.Code § 3850(b)

(West Supp.1987). In *Unruh*, this identification was held forfeited when the insurer stepped outside the proper bounds of an investigation of the nonmedical facts of the case. 102 Cal.Rptr. at 821, 825, 498 P.2d at 1069, 1073. Because the California statute specifically identified the insurer with the employer, the court resorted to a negligence/intentional tort distinction to hold that the insurer no longer was the employer's alter ego when it committed intentional torts.

Other jurisdictions confronting this question of third-party actions against insurers for alleged negligence in either safety inspections or medical services have reached differing results.[3] These decisions are of limited value since each state's statutory scheme differs greatly. We therefore turn to the specific language of the Alaska Act.

The Alaska Workers' Compensation Act does not mention an insurer in the exclusivity provision of AS 23.30.055, the definition of employer in AS 23.30.265(13), or in the third-party suit provision in AS 23.30.015(a). A "carrier" is defined in AS 23.30.265(5) as "a person authorized to insure under this chapter and includes self-insurers." Thus, as noted in *Stafford*, the Act defines "employers" and "insurers" as separate, distinct entities. 526 P.2d at 42.

Alaska Statute 23.30.015(i) subrogates an insurer to all the rights of the employer after the carrier has assumed the payment of compensation. WAUSAU argues that this provision provides them with the employers' immunity from a negligence action. Other courts have been hesitant to

---

**2.** *Unruh* cites two California Court of Appeal cases holding that a carrier may not be sued for negligence in performing work place inspections. *Burns v. State Comp. Ins. Fund*, 265 Cal. App.2d 98, 71 Cal.Rptr. 326 (1968); *State Comp. Ins. Fund v. Superior Court (Breceda)*, 237 Cal. App.2d 416, 46 Cal.Rptr. 891 (1965).

**3.** For decisions allowing suit against carriers as third-parties in the absence of express statutory language, *see Beasley v. MacDonald Eng. Co.*, 287 Ala. 189, 249 So.2d 844 (1971); *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 199 N.E.2d 769 (1964); *Fabricius v. Montgomery Elevator Co.*, 254 Iowa 1319, 121 N.W.2d 361 (1963); *Andrews v. Insurance Co. of N. Am.*, 60 Mich. App. 190, 230 N.W.2d 371, 374 (1975); *Corson v. Liberty Mut. Ins. Co.*, 110 N.H. 210, 265 A.2d 315

(1970); *Rothfuss v. Bakers Mut. Ins. Co.*, 107 N.J.Super. 189, 257 A.2d 733 (App.Div.1969); *Derosia v. Duro Metal Products Co.*, 147 Vt. 410, 519 A.2d 601 (1986).

For decisions prohibiting suit against an insurer as a third party, *see Kifer v. Liberty Mut. Ins. Co.*, 777 F.2d 1325 (8th Cir.1985) (Arkansas law); *Gerace v. Liberty Mut. Ins. Co.*, 264 F.Supp. 95 (D.D.C.1966); *Mustapha v. Liberty Mut. Ins. Co.*, 268 F.Supp. 890 (D.R.I.1967), *aff'd*, 387 F.2d 631 (1st Cir.1967); *Barrette v. Travelers Ins. Co.*, 28 Conn.Sup. 1, 246 A.2d 102 (1968); *Reid v. Employers Mut. Liab. Ins. Co.*, 59 Ill.2d 194, 319 N.E.2d 769 (1974); *Flood v. Merchants Mut. Ins. Co.*, 230 Md. 373, 187 A.2d 320 (1963); *Matthews v. Liberty Mut. Ins. Co.*, 354 Mass. 470, 238 N.E.2d 348 (1968).

allow suit against a carrier due to the related problem of a subrogated carrier suing itself.[4] The concern is that since the carrier is subrogated to the injured employee's cause of action against a third-party tortfeasor, "if the carrier can be a third-party tortfeasor, the carrier will end by suing itself"—an incongruous result that the legislature could not have intended. 2A A. Larson § 72.95, at 14–321. However, as Larson points out:

> This argument has been rejected on several grounds by the courts finding carrier liability. One is that the subrogation provisions are purely procedural and thus cannot be held to modify the definition of "employer." Another is that the subrogation passage "does not deal with the subject matter" in issue, which is the question whether the employee's common-law right is taken away from him. The original *Smith* case invoked a sort of dual capacity doctrine, saying that the carrier was being sued not as compensation carrier but as an independent third party. All such cases made short work of the spectre of double recovery by pointing out that the carrier would of course be entitled to set off in a judgment against itself as a tortfeasor the amount of compensation paid by it as insurance carrier. And running through all these opinions was the thought that this kind of result was really not all that preposterous. Increasingly common is the spectacle of an insurance carrier acting as compensation subrogation plaintiff and as defendant insurer on a third party's automobile liability risk. Problems of conflict of interest and of public policy may arise; but no one worries much any-

more about the conceptual problem whether the carrier can sue itself.

*Id.* at 14–322 (footnotes omitted). We similarly conclude that the subrogation provision in AS 23.30.015(i) does not bootstrap an insurer into the definition of an employer in subsection (a). We therefore conclude that there is nothing in the statutory language of the Alaska scheme which prevents an employee from bringing a negligence action against a carrier for negligent inspection of the employer's workplace.[5]

WAUSAU contends that such a result is contrary to public policy since the threat of potential tort liability will discourage carriers from inspecting employers' workplaces.[6] We decline to judicially amend the Act on the basis of such a policy argument. This type of policy determination is appropriately left for the legislature.

In conclusion, we find that there is nothing in the statutory language of the Alaska scheme which prevents an employee from bringing suit against a compensation carrier for the negligent performance of a safety inspection. Therefore, Judge Ripley erred in dismissing the estates' claims against WAUSAU.

**D. Did WAUSAU Owe a Duty to the Pilots to Inspect ERA's Working Conditions in a Non-negligent Manner?**

■ WAUSAU argues that even if a carrier is not immune from suit for its negligent inspection of an employer's work place, dismissal was proper on the alternative ground that WAUSAU owed no duty to the decedents to inspect ERA's working conditions. The estates contend that, even in the absence of contractual obligation between WAUSAU and ERA, WAUSAU may

---

4. *See Mustapha v. Liberty Mut. Ins. Co.,* 268 F.Supp. 890 (D.R.I.), *aff'd,* 387 F.2d 631 (1st Cir.1967); *Kotarski v. Aetna Cas. & Sur. Co.,* 244 F.Supp. 547 (E.D.Mich.1965), *aff'd,* 372 F.2d 95 (6th Cir.1967); *Schulz v. Standard Acc. Ins. Co.,* 125 F.Supp. 411 (E.D.Wash.1954) (Idaho law); *Flood v. Merchant Mut. Ins. Co.,* 230 Md. 373, 187 A.2d 320 (1963).

5. In the absence of express legislative intent to the contrary, "[s]tatutes ... that establish rights ... in derogation of the common law are construed in a manner that effects the least change possible in the common law." *Hugo v. City of*

*Fairbanks,* 658 P.2d 155, 161 (Alaska App.1983) (citing 3 C. Sands, *Sutherland Statutory Construction* § 59.03, at 6–7 (4th ed. 1973)).

6. Some courts have extended immunity to carriers from third-party suits since they believed imposing liability on carriers would create a great disincentive to their carrying out the socially useful function of independent safety inspections. *See Kifer,* 777 F.2d at 1335, 1338–39; *Nelson,* 199 N.E.2d at 796 (Schaefer, J., dissenting); *Matthews,* 238 N.E.2d at 348; *Kotarski,* 244 F.Supp. at 558–59 (Michigan law); 2A A. Larson § 72.98.

be held liable for "negligent performance of undertaking to render services" if WAUSAU actually inspected the working conditions of ERA prior to the accident.

The estates' argument is well taken. The Restatement (Second) of Torts § 324A (1965) imposes liability on a defendant to a third party when the defendant negligently performs an undertaking to render services:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*See Adams v. State*, 555 P.2d 235, 240 n. 7 (Alaska 1976) (citing § 324A of the Restatement). In *Adams*, the court held that victims of a hotel fire had a cause of action against the state for failure to take action after fire inspectors discovered extremely dangerous fire conditions. *Id.* at 240–42. The court noted that "once an inspection has been undertaken the state has a further duty to exercise reasonable care in conducting fire safety inspections, and that liability will attach where there is a negligent failure to discover fire hazards which would be brought to light by an inspection conducted with ordinary care." *Id.* at 240. The court then cited a number of cases in which employees were allowed to sue workers' compensation carriers for negligent safety inspections.[7]

The second amended complaint alleges that "WAUSAU ... did inspect, certify, authorize, and approve the working conditions of Defendants Jet Alaska, ERA and Rowan" and that WAUSAU's actions "were accomplished negligently." This language is sufficient to make out a cause of action for negligent performance of an undertaking. As a result, it would be improper to dismiss the allegations against WAUSAU for failure to state a cause of action. We, therefore, reverse the trial court's dismissal of the claims against WAUSAU under Civil Rule 12(b)(6) and remand the issue to the trial court for further proceedings.

**E. Did the Court Err in Dismissing the Allegations Against the John Doe Defendants?**

We initially note that since all claims against the Doe defendants were dismissed by the trial judge, this question is ripe for review and properly before us.[8]

Judge Ripley dismissed the allegations against the "John Doe" defendants on the grounds that such use of fictitious defendants is not permissible under our rules of civil procedure.

At common-law, it was essential that a person's name appear in the complaint before he or she could be made a defendant in the action.[9] The majority of courts consid-

---

7. *Beasley*, 249 So.2d at 847; *Sims v. American Cas. Co.*, 131 Ga.App. 461, 206 S.E.2d 121 (1974); *Nelson*, 199 N.E.2d at 779; *Fabricius*, 121 N.W.2d at 365.

8. ROWAN contends that the issue is not ripe for review since the superior court had not entered final judgment with respect to the "John Doe" defendants. In *Greater Anchorage Area Bor. v. City of Anchorage*, 504 P.2d 1027, 1030 (Alaska 1972), this court stated that the "basic thrust of the finality requirement is that the judgment must be one which disposes of the entire case...." "[T]he reviewing court should look to the substance and effect, rather than the form, of the rendering court's judgment, and focus primarily on the operational or 'decretal' language therein."

We conclude that since Judge Ripley's order dismisses the Does from the case, the order disposes of the entire case as to the Does and the finality requirement is thereby satisfied.

9. Note, *Designation of Defendants by Fictitious Names—Use of John Doe Defendants*, 47 Iowa L.Rev. 773, 775 (1961). This requirement has been eliminated in certain situations by statutes which allow the pleading of fictitious or John Doe defendants. *Id.* at 776. However, as the above commentator noted "[t]his is not to say that the rule requiring the true name of the defendant to be stated in the complaint is with-

ering this issue have held that jurisdiction to sue unknown or fictitious persons must be obtained pursuant to some express rule or statute.[10] However, at least one state has judicially adopted Doe pleading without an express statute or rule.[11]

The estates argue that there has been a long standing practice of Doe pleading in this state. While we acknowledge this past use of Doe pleading, we note that we have never been called upon to consider the propriety of this practice. We decline, however, to address the general propriety of Doe pleading in this case.[12] In the action before us, we find that Judge Ripley did not abuse his discretion in dismissing the claims against the Doe defendants since the estates are unable to identify which allegedly defective component of the Learjet was manufactured by the Doe defendants.[13] We therefore affirm the superior court's dismissal of the Doe defendants.

**F. Did the Court Abuse Its Discretion in Awarding ERA and WAUSAU $14,476 in Attorney's Fees, which Represented 80 Percent of Their Actual Attorney's Fees?**

■ The trial court awarded ERA and WAUSAU 80 percent of their fees, finding that the plaintiffs' claims "bordered very closely upon the nonmeritorious and the frivolous." Since we reversed the court's dismissal of the claim against WAUSAU, the award of fees to them is vacated. As to the award of fees to ERA, we conclude

that the trial court did not abuse its discretion in awarding fees.

In *State v. University of Alaska*, 624 P.2d 807, 817–18 (Alaska 1981), this court held that an award of "substantially full attorneys fees" is manifestly unreasonable in the absence of a claim that is "frivolous, vexatious or devoid of good faith." The court held that an award over 90 percent of actual costs was a substantially full award of fees. *Id.*

However, this court has affirmed partial awards of fees as high as 86 percent of actual fees even when the claims were not frivolous. *See Hausam v. Wodrich*, 574 P.2d 805, 811 (Alaska 1978) (court affirmed award of 86 percent of actual attorney's fees even though the case involved no improper conduct by the losing party); *see also O'Buck v. Cottonwood Village Condominium Ass'n, Inc.*, 750 P.2d 813, 821 (Alaska 1988) (court affirmed award of approximately 80 percent of actual attorney's fees to prevailing defendants); *Steenmeyer Corp. v. Mortenson–Neal*, 731 P.2d 1221, 1226 (Alaska 1987) (court affirmed award of 75 percent of actual attorney's fees); *Crook v. Mortenson–Neal*, 727 P.2d 297, 306 (Alaska 1986) (court affirmed award of 80 percent of actual attorney's fees).

We conclude that in this case an award of 80 percent of actual attorney's fees is not manifestly unreasonable. We therefore decline to interfere with the trial court's exercise of discretion and affirm the award of attorney's fees to ERA.

---

out force; John Doe complaints are still an exception to the rule and used only under exceptional circumstances." *Id.*

**10.** *Hailey v. Interstate Machinery Co.,* 121 Ill. App.3d 237, 76 Ill.Dec. 709, 459 N.E.2d 346, 347 (1984) (citing 59 Am.Jur.2d *Parties* § 17 (1971)); *Hutchinson v. Fish Engineering Corp.,* 38 Del.Ch. 414, 153 A.2d 594 (1959); *Grantham Realty Corp. v. Bowers,* 215 Ind. 672, 22 N.E.2d 832, 836 (1939); *Hill v. Henry,* 66 N.J.Eq. 150, 57 A. 554 (1904); 59 Am.Jur.2d *Parties* § 16, at 401 (1987) ("In actions or proceedings which are not strictly in rem but are in personam or only quasi in rem, there is generally no authority to proceed against unknown persons in the absence of statute or rule. Jurisdiction to sue such persons must be obtained pursuant to

some statute or rule."); Note, *supra* note 9, at 776.

**11.** *Maddux v. Gardner,* 239 Mo.App. 289, 192 S.W. 14, 18 (1945).

**12.** We acknowledge the potential importance of this issue and have referred its consideration to the Civil Rules Committee.

**13.** The Second Amended Complaint contains the following allegations against the "John Doe" defendants:

Defendants Doe I, II, and III negligently manufactured and designed other equipment used in Learjet N455JA, which items were not manufactured and designed in accordance with generally accepted standards.

## IV.

In conclusion, we affirm the superior court's dismissal of the claims against ERA and the John Doe defendants. We reverse the dismissal of the claims against WAUSAU and remand the claims back to the superior court for further proceedings consistent with this opinion. We vacate the award of attorney's fees to WAUSAU and affirm the award of fees to ERA.

AFFIRMED in part, REVERSED in part, VACATED in part and REMANDED for further proceedings consistent with this opinion.